UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIANE ARELLANO,

    Petitioner,

       v.

SHAWN BREWER,

    Respondent.

Case No. 2:17-CV-12206

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

_____/

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITIONS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS*

### I. INTRODUCTION

This matter is before the Court on a *pro se* habeas corpus petition and an amended petition which were filed under 28 U.S.C. § 2254. ECF Nos. 1, 9. Petitioner Diane Arellano ("Petitioner") challenges her Michigan convictions for First-Degree, Premeditated Murder, MICH. COMP. LAWS § 750.316(1)(a), and Possession of a Firearm during the Commission of a Felony ("Felony Firearm"), MICH. COMP. LAWS § 750.227b. She asserts as grounds for relief that the officer in charge of her criminal case invaded the province of the jury, that her trial and appellate attorneys were ineffective, and that her conduct was legally justified due to provocation. Respondent Shawn Brewer ("Respondent") argues in an answer to

the petitions that the state trial court reasonably applied *Strickland v. Washington,* 466 U.S. 668 (1984), to Petitioner's claim about appellate counsel and that Petitioner's remaining claims are procedurally defaulted, meritless, or not cognizable on habeas review.  ECF No. 18, PageID.257-258.  The Court agrees that Petitioner's claims do not warrant habeas corpus relief.  Accordingly, the Court will deny the petitions and decline to issue a certificate of appealability.

## II. BACKGROUND

The charges against Petitioner arose from the fatal shooting of Petitioner's husband, Michael Arellano.  Petitioner was tried before a jury in Genesee County Circuit Court.  The Michigan Court of Appeals accurately summarized the evidence at trial as follows:

> Defendant's son, Hunter Kircher, found Arellano in the basement of the home that defendant, Arellano, and Kircher shared.  Responding Genesee County Deputy Sheriff Russell Sorenson testified that Arellano had a bullet hole in his chest, and that a bolt-action rifle and what appeared to be semi-automatic shell casings were found near the body.  The Genesee County Deputy Medical Examiner determined that Arellano had one gunshot wound to his chest and one to his head, and that either wound alone would have been fatal.
>
> Upon discovering the body, Kircher telephoned defendant, who was at a Jo–Ann Fabrics store in Burton Michigan, and told her that Arellano was hurt. A store employee, Kristina Griffin, testified that defendant was very distressed by this phone call.  Griffin called 911 because she believed that defendant was too distraught to drive.  She testified that at some point defendant entered the bathroom of the store, claiming she had begun menstruating.  When defendant exited the bathroom, she was not wearing any pants and explained that she had "bled all over them." She indicated that her pants were tucked under her arm inside her coat.

Griffin stated that she gave defendant a pair of pants from the break room.  She testified that the police arrived and that defendant left in their squad car.  The following day, the police recovered paper towels that were in the trash can in the bathroom.  Griffin said they had dark red stains.

Kircher testified that defendant disposed of a pair of pants in a Jo–Ann Fabrics bag at a Dollar Den dumpster on the night of the shooting.  He testified that defendant told him she had defecated and urinated in the pants and was embarrassed.  The police later recovered pants from the dumpster that had apparent bloodstains. Various of the bloodstains were later matched to the victim and defendant.

Two days after the shooting, Burton Police found a silver semiautomatic handgun and a bottle of bleach in an area across the street from Jo–Ann Fabrics.  The gun was registered to defendant. DNA on the pistol muzzle was matched to the victim. A firearms and tool marks examiner testified that two shell casings found near Arellano's body were determined to have been fired from the handgun, although he could not say whether the bullets found in Arellano's body were fired from the handgun.  Both the handgun and the rifle found next to Arellano tested positive for chloride and chlorate, ingredients in bleach.

. . . . Detective [Mark] Pendergraff of the Michigan State Police testified that he interviewed defendant four times before her arrest; these interviews were recorded and played for the jury during trial, and transcripts of the interviews were entered into evidence.  During the first three interviews, defendant offered various theories regarding Arellano's death, including that he died from heart complications, that he was shot by someone who was coming to buy car parts, and that he was shot by someone from the "projects."  Defendant denied shooting Arellano during these interviews.  During the fourth interview, after Pendergraff informed her that her gun had been found, defendant stated for the first time that she had shot the victim in self-defense because he was angry and was holding a rifle. Defendant described how the victim had allegedly held the rifle, and Detective Pendergraff enacted her description as part of his trial testimony. Pendergraff testified that defendant's description of how the victim had held the gun was not how a person would hold a rifle if the person was going to shoot it.

3

*People v. Arellano*¸ No. 322886, 2015 WL 7370072, at *1–2 (Mich. Ct. App. Nov. 19, 2015) (unpublished).

Although the trial court instructed the jurors on the lesser-included offenses of Second-Degree Murder and Voluntary Manslaughter, the jury found Petitioner guilty, as charged, of First-Degree, Premeditated Murder and Felony Firearm.  ECF No. 19-22, PageID.2089.  On July 7, 2014, the trial court sentenced Petitioner to two years in prison for the felony-firearm conviction and a consecutive term of life imprisonment without the possibility of parole for the murder conviction.  ECF No. 19-23, PageID.2100.

In an appeal of right, Petitioner argued that the conclusions and opinions of the officer in charge of her case improperly invaded the province of the jury and that trial counsel was ineffective for failing to object to the officer's testimony.  The Michigan Court of Appeals rejected these claims and affirmed Petitioner's convictions in a *per curiam* opinion.  *See Arellano*, 2015 WL 7370072.

Petitioner then raised several new issues about the prosecutor, the police, her trial and appellate attorneys, and the cumulative effect of errors in a *pro se* application for leave to appeal in the Michigan Supreme Court.  ECF No. 19-30, PageID.2609–67.  On June 28, 2016, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues.  *See People v. Arellano*, 880 N.W.2d 578 (Mich. 2016) (mem.).

In 2017, Petitioner filed a motion for relief from judgment in the state trial court.  ECF No. 19-24.  She claimed that her rights were impermissibly infringed in various ways, that her trial and appellate attorneys were ineffective, and that she was innocent.  *Id.* at PageID.2104, 2115.  The state trial court denied Petitioner's post-conviction motion because Petitioner could have raised her claims on appeal from her convictions and she failed to show "good cause" for not raising the claims on appeal and "actual prejudice."  The trial court also found no merit in Petitioner's claim of actual innocence.  *See People v. Arellano*, No. 13-033463-FC (Genesee Cty. Cir. Ct. May 31, 2017), ECF No. 19-27.

Petitioner then appealed the trial court's decision.  While her appeal was pending in the Michigan Court of Appeals, Petitioner commenced this case.  She filed a habeas corpus petition and a motion to stay the federal proceeding while the state courts completed their review of her post-conviction motion.  ECF Nos. 1, 2.  The sole ground for relief in her habeas petition was the claim that she raised in her appeal of right before the Michigan Court of Appeals: that the conclusions and opinions of the officer in charge of her case improperly invaded the province of the jury.  ECF No. 1, PageID.5.  In her motion for a stay, Petitioner asked the Court to hold her habeas petition in abeyance while she exhausted state remedies for her claims.  ECF No. 2, PageID.16.

On September 13, 2017, the Court granted Petitioner's motion for a stay and closed this case for administrative purposes. *See* ECF No. 6. The Michigan Court of Appeals subsequently denied Petitioner's appeal from the trial court's denial of Petitioner's post-judgment motion because Petitioner had failed to establish that the trial court erred in denying the motion. *People v. Arellano*, No. 339319 (Mich. Ct. App. Dec. 21, 2017), ECF No. 19-29, PageID.2517. Petitioner appealed that decision to the Michigan Supreme Court, but on October 2, 2018, the Michigan Supreme Court denied leave to appeal because Petitioner failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Arellano*, 917 N.W.2d 657 (Mich. 2018) (mem.).

On October 11, 2018, Petitioner returned to this Court with a motion to lift the stay (ECF No. 8) and an amended habeas corpus petition (ECF No. 9). The amended petition incorporates the claim that Petitioner made in her initial petition and raises the following additional claims: misrepresentation by appellate attorney and misconduct by both prosecutors and the police; misrepresentation by trial counsel and misconduct by both prosecutors and the police; and legal justification due to provocation. ECF No. 9, PageID.207, 209–10, 212.

In an Order dated January 29, 2019, the Court (1) granted Petitioner's motion to lift the stay, (2) ordered the Clerk of Court to re-open this case and serve the initial and amended petitions on the State, and (3) ordered the State to file a response to the

petition.   ECF No. 13.   Respondent subsequently filed his answer in opposition to the habeas petitions.   ECF No. 18.   He argues that: (1) Petitioner's first claim is procedurally defaulted and not cognizable on habeas review, and her derivative claim about trial counsel is meritless; (2) the state trial court reasonably applied *Strickland* to Petitioner's claim about appellate counsel; (3) Petitioner's claim about trial counsel is procedurally defaulted and meritless, and the state trial court's rejection of the claim was a reasonable application of *Strickland*; and (4) Petitioner's assertions that she acted in self-defense and is innocent are procedurally defaulted and not cognizable on habeas review.   ECF No. 18, PageID.257–58.   Petitioner did not file a reply to Respondent's answer.   In fact, she expressly waived the right to file a reply.   *See* ECF No. 14, PageID.245.

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires prisoners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. §§ 2254(d)(1) and (d)(2)).   "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the

relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S. Ct. 2059, 138 L.Ed.2d 481 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24, 123 S. Ct. 357, 154 L. Ed. 2d 279 (2002) (per curiam)." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (footnote omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Only an 'objectively unreasonable' mistake, . . . one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir.) (quoting *Richter*, 562 U.S. at 103), *cert. denied*, 140 S. Ct. 445 (2019). The Court's review generally is "limited to the record that was before the state court that adjudicated the claim on the merits," *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), and the Court presumes that a state-court's factual determinations are correct unless

the petitioner rebuts the presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

## IV.  DISCUSSION

### A.  The Officer in Charge

Petitioner alleges that she is entitled to a new trial because the conclusions and opinion of the officer in charge of her criminal case invaded the province of the jury.  ECF No. 1, PageID.5.  The disputed testimony occurred when the prosecutor asked Detective Mark Pendergraff about his interviews with Petitioner.   The prosecutor's questions and Detective Pendergraff's answers read as follows:

Q.  [Prosecutor]. Did you feel that she was telling you the truth?

A.  [Detective Pendergraff].  The whole truth about what happened that night?

Q.  Yeah?

A.  No.

Q.  Why is that?

A.  Well, because of the evidence of the scene.  Um, her claim that she didn't remember a lot of things—I mean, she was—her detail—her memory was pretty detailed up to the event and then all of a sudden that memory stops and gets spotty and then after the event, after being at Jo–Ann's, the memory increases a little bit.  And there were some things at the scene that, um—that I could tell by the evidence that had taken place[,] I didn't feel that she had been truthful about.

Q.  What were the things specifically at the scene that you didn't think she was being truthful about?

A.  Well, one was the rifle.  Um, the other was—

Q.  When you say the rifle, what do you mean about the rifle?

A.  Well, the—the placement of the rifle and that he had been holding it pointing it at her.  I didn't believe that to be true especially considering that if he had been holding the rifle—when she shot him it was right here at the chest.  She would've had to have walked up to him past the rifle, put the gun to his chest, and pull the trigger.

     . . . .

. . . I didn't believe that she didn't remember where she'd put the gun or the fact that she had hidden the gun.  Um, just things like that during the course of the interview.

 6/5/14 Trial Tr., ECF No. 19-21, PageID.1728–30.

After a few more questions and answers, the prosecutor asked Detective Pendergraff whether he could infer what happened at the crime scene.  Detective Pendergraff answered:

[M]y belief through – from the investigation and based on my experience and my training is that he was sitting at his desk working on his computer then she came down the stairs and walked up to him, put the gun to his chest, and pulled the trigger.  As a result of him being shot I believe that the chair – he jumped.  The chair flew back.  He turned, potentially knocked the items off the deck, knocked the speaker over in to (sic) the door, and then fell face first on the floor.  And then she walked up to him, still more than a few feet away, and fired the second round in to (sic) the back of his head.  I don't believe under the circumstances and from what the evidence indicates that he was holding that rifle when she came down the stairs.

*Id*. at PageID.1730–31.

Later, on cross-examination, Detective Pendergraff opined that Petitioner began to tell him some of the truth when she was confronted with the fact that someone had found her gun. *Id*. at PageID.1735. On re-direct examination, Detective Pendergraff stated that he thought Petitioner's memory was selective and that she had told him "[j]ust part of the truth." *Id*. at PageID.1751. He also testified that he did not believe the victim was physically abusive to Petitioner and that there were many times during Petitioner's various statements when she changed her story and was not being truthful. *Id*. at PageID.1754, 1757.

Although Petitioner claims that Detective Pendergraff's testimony invaded the province of the jury, she first raised the issue during her appeal of right. The Michigan Court of Appeals reviewed the claim for "plain error affecting substantial rights" because Petitioner did not preserve the issue by objecting to Detective Pendergraff's testimony at trial. *People v. Arellano*, No. 322886, 2015 WL 7370072, at *13 (Mich. Ct. App. Nov. 19, 2015) (unpublished). Respondent, therefore, argues that the claim is procedurally defaulted.[1]

---

[1] Respondent argues that Petitioner's first claim is procedurally defaulted for an additional reason, namely, that she did not raise the claim in the Michigan Supreme Court. ECF No. 18, PageID.280–81. The Court need not address this argument or Respondent's other arguments about Petitioner's first claim because Respondent's first procedural-default argument is dispositive of the issue.

## 1. Procedural Default

The doctrine of procedural default generally precludes a federal court from reviewing the merits of a state prisoner's claims when the state court declined to hear the claims due to the prisoner's failure to abide by a state procedural rule. *Martinez v. Ryan*, 566 U.S. 1, 9 (2012). Stated differently, "[w]hen a state court refuses to consider a habeas claim 'due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review.'" *Kissner v. Palmer,* 826 F.3d 898, 904 (6th Cir. 2016) (quoting *Seymour v. Walker*, 224 F.3d 542, 549-50 (6th Cir. 2000) (citing *Wainwright v. Sykes*, 433 U.S. 73, 80, 84-87 (1977)). Moreover,

> [a] petitioner may avoid this procedural default only by showing that there was cause for the default and prejudice resulting from the default, or that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case. *See Sykes*, 433 U.S. at 87, 90-91, 97 S. Ct. 2497. In order to establish cause, a habeas corpus petitioner must show that "some objective factor external to the defense" prevented the petitioner's compliance with a state procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L.Ed 2d 397 (1986).

*Id*.

In this Circuit, "[a] habeas petitioner's claim will be deemed procedurally defaulted if each of the following four factors is met: (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review

of a federal constitutional claim; and (4) the petitioner has not shown cause and prejudice excusing the default." *Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013) (citing *Jalowiec v. Bradshaw*, 657 F.3d 293, 302 (6th Cir. 2011)). To determine whether a state procedural rule was applied to bar a habeas claim, courts look "to the last reasoned state court decision disposing of the claim." *Id*. (citing *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010) (en banc)).

## 2. Application of the Doctrine

The first three procedural-default factors are resolved here. First, there is a relevant state procedural rule: Michigan's contemporaneous-objection or issue-preservation rule, which requires a defendant "to properly preserve an issue for appeal" by "'rais[ing] objections at a time when the trial court has an opportunity to correct the error.'" *People v. Pipes*, 715 N.W.2d 290, 296–97 (Mich. 2006) (quoting *People v. Grant*, 520 N.W.2d 123, 130 (Mich. 1994)). Petitioner violated this rule by failing to object at trial to Detective Pendergraff's opinion about her truthfulness.

Second, the Michigan Court of Appeals was the last state court to issue a reasoned decision on Petitioner's claim, and it reviewed the claim for "plain error." A state appellate court's "plain error" review is considered enforcement of a procedural default. *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001). Third, the state procedural rule is an adequate and independent state ground for denying review

13

of a federal constitutional claim, because it is both well-established and normally enforced.  *Taylor v. McKee*, 649 F.3d 446, 450–51 (6th Cir. 2011).

### a.  Cause and Prejudice

The remaining question is whether Petitioner has shown "cause" for her procedural default and resulting prejudice.  She alleged in state court that her trial attorney was ineffective for failing to object to Detective Pendergraff's testimony.

Constitutionally ineffective assistance of counsel can be cause for a procedural default.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013).  The Michigan Court of Appeals, however, determined that Petitioner's trial counsel was not ineffective, and to prevail on a claim about trial counsel, Petitioner must show that "counsel's performance was deficient" and "that the deficient performance prejudiced the defense."  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  Petitioner has failed to satisfy this standard for the following reasons.

To begin, the Court takes notice that Detective Pendergraff did not testify that, in his opinion, Petitioner was guilty.  The Michigan Court of Appeals, moreover, determined that Detective Pendergraff's disputed remarks were proper under the Michigan Rules of Evidence.  The Court of Appeals gave the following reasons for this conclusion:  (1) Pendergraff's statements regarding the veracity of Petitioner's story were based on evidence at the crime scene and Petitioner's changing story

about what occurred; (2) the testimony about how a rifle is held was (a) a proper reference to the statements of a party opponent, (b) based on Pendergraff's rational perception of the evidence and how an individual intending to shoot would hold a rifle, and (c) helpful in determining a fact at issue, namely, whether Petitioner had acted in self-defense; (3) Pendergraff's testimony explained his investigation; (4) his opinion was related to his perception of the crime scene and the description that Petitioner gave; and (5) his reference to Petitioner as the shooter was permissible because Petitioner admitted shooting the victim. *People v. Arellano¸* No. 322886, 2015 WL 7370072, at *3–4 (Mich. Ct. App. Nov. 19, 2015) (unpublished).

This Court is bound by the state court's conclusion that Detective Pendergraff's testimony was admissible under state law, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005), and because the testimony was admissible, an objection would have lacked merit. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) (citations omitted). Therefore, trial counsel's failure to object to Detective Pendergraff's remarks on her truthfulness did not amount to ineffective assistance, and Petitioner has not shown "cause" for her procedural default.

Petitioner also has not shown that she was prejudiced by the alleged error. As the Michigan Court of Appeals pointed out, substantial other evidence linked Petitioner to the crime, and Detective Pendergraff's testimony likely was not

outcome determinative, even if portions of his testimony were admitted erroneously. *Arellano*, 2015 WL 7370072, at *4.

### b. Miscarriage of Justice

In the absence of "cause and prejudice," a habeas petitioner may pursue a procedurally defaulted claim if she can demonstrate that failure to consider her claim "will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "To be credible, [a claim of actual innocence] requires [the] petitioner to support [her] allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Petitioner has not presented the Court with any new evidence of actual innocence, and the evidence against her at trial was strong. A miscarriage of justice, therefore, will not occur as a result of the Court's failure to address the substantive merits of Petitioner's claim about Detective Pendergraff's testimony. The claim is procedurally defaulted. The derivative claim about trial counsel does not warrant habeas relief because the state appellate court's conclusion—that trial counsel was

not ineffective for failing to make a meritless objection–is not contrary to, or an

unreasonable application of, *Strickland*.

## B.  Trial Counsel, the Prosecutors, and Police

The Court next addresses Petitioner's claim that she was "misrepresented" by

trial counsel, and that the two prosecutors on her case and the police engaged in

misconduct.  Petitioner's supporting facts read as follows:

> [M]isrepresentation as <u>PAID</u> trial counsel <u>AIDED</u> state's manufactured
> murder scenario <u>DESPITE</u> knowing <u>all</u> that's in [the] amended Habeas!
> No experts called – blood expert would have certainly showed my left
> knee imprint (see exhibit AA) along with <u>NO</u> blood or ballistic
> evidence proves State manufactured murder scenario!  He <u>NEVER</u>
> objected to one misconduct by prosecution or police!   Their
> BALLISTIC expert testified <u>BULLETS</u> were <u>NOT</u> from my gun,
> PLANTED casings were.  I shot in SELF-DEFENSE!

ECF No. 9, PageID.210 (emphases in original).

Respondent argues that Petitioner's claim is procedurally defaulted because

the state trial court concluded on post-conviction review that Petitioner could have

raised her claim about trial counsel on appeal and that she failed to demonstrate

"good cause" for failing to do so.  However, Petitioner did raise claims about trial

counsel, the prosecutors, and the police in the Michigan Supreme Court on direct

review.  And even though "[f]ederal habeas courts generally refuse to hear claims

'defaulted . . . in state court pursuant to an independent and adequate state procedural

rule,'" *Johnson v. Lee*,  136 S. Ct. 1802, 1803–04 (2016) (quoting *Coleman v.*

*Thompson,* 501 U.S. 722, 750 (1991)), a procedural default ordinarily "'is not a

jurisdictional matter,'" *id.* at 1806 (quoting *Trest v. Cain*, 522 U.S. 87, 89 (1997)). In the interest of judicial economy, a federal court may bypass a procedural-default question when the merits of the claim are easily resolvable against the habeas petitioner. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). The Court proceeds to address Petitioner's claim on the merits because that is the more efficient approach.

### 1. Clearly Established Federal Law

To prevail on a claim of ineffective assistance of trial counsel, a habeas petitioner must show that trial "counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The deficient-performance prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

### 2. Application

#### a. Manufactured Evidence

Petitioner alleges that the State "manufactured [the] murder scenario." As "proof" of this, Petitioner alleges that no blood or ballistic evidence proved the State's theory and that trial counsel aided the State's manufactured theory about the murder.

The record belies Petitioner's assertions. A lay person happened to find the handgun in a wooded area near Jo-Ann Fabrics two days after the crime and then called the police. 5/30/14 Trial Tr., ECF No. 19-18, PageID.1207–10. The officer who responded to the call collected the gun and later learned that it was registered to Petitioner. *Id*. at PageID.1211–12, 1217. The gun was a 380 caliber, and Detective Pendergraff knew from his visit to the crime scene two days earlier that the casings at the crime scene were the same caliber. *Id*. at PageID.1222. An expert witness on firearms identification determined that the casings were fired from the

handgun and that they could not have been fired from the victim's rifle.  *Id*. at PageID.1408–09, 1411.

An expert in DNA analysis testified that the major DNA donor in the swab from the muzzle of the handgun was the victim.  6/3/14 Trial Tr., ECF No. 19-19, PageID.1471.  The major DNA type on the holster and on the waist and back of the blue jeans matched Petitioner.  *Id*. at PageID.1472–73, 1476.  The major DNA type on the blood stain from the knee of the jeans matched the victim, and Petitioner could not be excluded as the donor of one of the minor types on the stain.  *Id*. at PageID.1474–76.

There is nothing in the record to suggest that the prosecution manufactured the blood and ballistics evidence or planted any evidence.  There also is no merit in Petitioner's claim that trial counsel aided the State in manufacturing evidence or in presenting its case.  As the state trial court pointed out in its decision on post-conviction review,

> [t]rial counsel presented his theory of self-defense in his opening argument. (Tr 1, 205.)  He then presented a variety of witnesses in support of his theory, including Defendant's son, Defendant herself, Defendant's medical professionals who witnessed her abuse, and an expert who testified about domestic abuse. (Tr VI; Tr VII.)  Then, trial counsel argued for and received a self-defense jury instruction. (Tr VII, 198.)  Then, defense counsel presented a coherent closing argument about why Defendant had to kill her husband, albeit he did not use the word "self-defense."  (Tr VII,151-173.)   Rather, he thoroughly explained how Defendant had been abused at the hands of the victim, and how that led to a defensive posture in her mind that if she did not kill him that he would have killed her.

ECF No. 19-27, PageID.2301–02.

Trial counsel also convinced the trial court to instruct the jury on voluntary manslaughter, despite the prosecutor's objection to the proposed instruction. 6/5/14 Trial Tr., ECF No. 19-21, PageID.1876–80. Accordingly, the Court concludes that trial counsel did not aid the State in presenting its case against Petitioner.

### b. Failure to Call Expert Witnesses

Petitioner also contends that trial counsel failed to call expert witnesses. This argument also is belied by the record. Trial counsel called an expert witness on domestic violence to support the defense theory that the victim abused Petitioner and that Petitioner shot the victim in self-defense. 6/6/14 Trial Tr., ECF No. 19-22, PageID.1901–86 (testimony of Dr. Lewis Okun). Although Dr. Okun was not permitted to opine whether Petitioner was a battered woman, whether the victim was a batterer, or whether Petitioner was a truthful person, *id.* at PageID.1884–85, trial counsel elicited Dr. Okun's testimony that Petitioner had a clear and coherent history of suffering from domestic violence "with no obvious . . . flaws or manufactured areas," *id.* at PageID.1905. Dr. Okun supported his conclusions with specific examples from his four-hour interview with Petitioner, *id.* at PageID.1905–06, and he explained at least one concept—dissociative amnesia—that Petitioner claims trial counsel should have raised as a defense. *Id.* at PageID.1908–09.

Petitioner herself testified in support of the self-defense theory.  6/5/14 Trial Tr., ECF No. 19-21, PageID.1733–1874.   Although she argued during post-conviction proceedings in state court that she had two additional experts who could have testified about Battered Spouse Syndrome, trial counsel could have concluded that more expert testimony on the topic would have been cumulative and not worth the additional expense.  "Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington v. Richter*, 562 U.S. 86, 107 (citation omitted).

Petitioner also implies that trial counsel should have called an expert witness on blood splatter.  However, Petitioner admitted to shooting the victim, and a blood splatter expert would not have aided her in presenting a self-defense theory.  Moreover, the Court "must presume that decisions of what evidence to present and whether to call or question witnesses are matters of trial strategy." *Cathron v. Jones*, 77 F. App'x 835, 841 (6th Cir. 2003) (citing *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002)).   The Court thus concludes that trial counsel was not ineffective for failing to call additional expert witnesses.

### c.  Failure to Object to Alleged Misconduct

Petitioner also contends that trial counsel failed to object to misconduct by the prosecution and the police.  The Court has already determined that trial counsel was

not ineffective for failing to object to Detective Pendergraff's testimony about Petitioner's truthfulness.

Petitioner, however, argued in state court that the prosecution staged the courtroom, misrepresented the facts, asserted facts not in evidence, altered the crime scene photos, tainted the testimony of two witnesses, twisted and suppressed the truth, and compromised the crime scene.  Although one of the prosecutors apparently tried to re-enact the shooting during her closing argument, *see* 6/6/14 Trial Tr., ECF No. 19-22, PageID.2017–18, this was not improper.  *See Pickens v. Gibson*, 206 F.3d 988, 1000 (10th Cir. 2000) (concluding that the prosecutor's comments and use of the murder weapon during closing arguments to demonstrate the shooting of the victims did not render the petitioner's trial fundamentally unfair, given the entire record and the context in which the comments were made).

Petitioner's other assertions about the prosecutors' presentation of the case are likewise meritless.  The witnesses generally corroborated each other's testimony, and the scientific evidence was presented persuasively by competent expert witnesses.  The record does not support Petitioner's claim that the prosecution manufactured evidence against her, tampered with the evidence, or misrepresented the truth.

In a final argument about the prosecutors, Petitioner contends that one of the prosecutors called her a liar, a murderer, and an adulterer.   The prosecutor did say

during closing arguments that Petitioner murdered her husband, lied repeatedly, and had affairs with multiple men. 6/6/14 Trial Tr., ECF No. 19-22, PageID.2008–11, 2030, 2032. The Court finds that these comments were not improper, however, because they were driven by the evidence, as opposed to the prosecutor's personal opinion of Petitioner. *Stermer v. Warren*, 959 F.3d 704, 727–28 (6th Cir. 2020). Trial counsel, therefore, was not ineffective for failing to object to the prosecutor's comments during closing arguments.

The Court also finds that these remarks were harmless because Petitioner herself admitted that she had intimate relationships with men while she was married to the victim, 6/5/14 Trial Tr., ECF No. 19-21, PageID.1794; that she lied a lot to one of her male acquaintances, *id*. at PageID.1797–98; and that she must have shot the victim, *id*. at 1845. The trial court, moreover, instructed the jury that the lawyers' arguments were not evidence and that the jury should decide the case only on the admissible evidence. 6/6/14 Trial Tr., ECF No. 19-22, PageID.2068, 2070.

### 3. Conclusion on Petitioner's claim about Trial Counsel

Trial counsel arguably satisfied *Strickland's* deferential standard. Even if counsel's performance were deficient, the evidence against Petitioner was substantial, and there is not a reasonable probability that the result of the trial would have been different if counsel had produced more expert witnesses or made additional objections. Moreover, the state trial court concluded that "trial counsel

was effective."  ECF No. 19-27, PageID.2306.  This conclusion was not contrary to, or an unreasonable application of, *Strickland*.  Petitioner, therefore, is not entitled to relief on her claim about trial counsel.

## C.  Appellate Counsel and the Prosecution

Petitioner alleges that she was "misrepresented" by her appellate attorney because counsel made 213 errors in his appellate brief and raised only one claim about a comment that the lead detective (Mark Pendergraff) made during trial. According to Petitioner, there were other grounds for appealing, such as arguing that Detective Pendergraff planted the bullet casings, manufactured the murder scenario, and suppressed a vast amount of evidence.  ECF No. 9, PageID.209.

Petitioner raised a claim about appellate counsel in her motion for relief from judgment.  Her claim was based on appellate counsel's failure to raise a claim about trial counsel.  The state trial court concluded that, because Petitioner failed to establish that trial counsel's performance was deficient, appellate counsel was not ineffective for failing to raise a claim about trial counsel.  ECF No. 19-27, PageID.2299–2300, 2307.

The proper standard for evaluating a claim about appellate counsel is the standard enunciated in *Strickland*.  *See Smith v. Robbins*, 528 U.S. 259, 285 (2000). To prevail on her claim, Petitioner must demonstrate (1) that appellate counsel acted unreasonably in failing to discover and raise non-frivolous issues on appeal, and (2)

there is a reasonable probability that she would have prevailed on appeal if her attorney had raised the issues. *Id*. (citing *Strickland v. Washington,* 466 U.S. 466, 687–91, 694 (1984)); *see also Pollini v. Robey*. __ F.3d __, __, No. 19-5131, 2020 WL 6938282, at *4 (6th Cir. Nov. 25, 2020) (stating that, "to prevail on a *Strickland*-based ineffective assistance of appellate counsel claim, [the petitioner] must satisfy two prongs: (1) that his appellate counsel was deficient, and (2) that the deficiency prejudiced him.").

Here, Petitioner blames her attorney for raising only one claim on appeal, but it was not a frivolous claim. Petitioner herself raised the claim in her habeas petition. Furthermore, an appellate attorney is not required to raise every non-frivolous claim requested by his or her client if the attorney decides, as a matter of professional judgment, not to raise the claim. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). In fact,

> the process of " 'winnowing out weaker arguments on appeal' " is "the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (quoting *Barnes*, 463 U.S. at 751-52, 103 S.Ct. 3308). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

*Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002).

Petitioner's claims about trial counsel, misconduct by the prosecution and police, and legal justification lack merit and are not clearly stronger than the claim that appellate counsel raised in the appeal of right. Thus, appellate counsel was not

ineffective for failing to raise those issues on appeal.  "[B]y definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit."  *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).

As for Petitioner's claim about appellate counsel, "it would be unreasonable to expect counsel to raise an ineffective assistance claim against himself." *Fautenberry v. Mitchell*, 515 F.3d 614, 640 (6th Cir. 2008).  The record, moreover, shows that appellate counsel offered to help Petitioner file a *pro se* supplemental brief on appeal if she drafted the brief.  ECF No. 19-27, PageID.2296–97.  Petitioner could have raised additional claims in a *pro se* supplemental brief and apparently chose not to do so.

For the foregoing reasons, the state trial court's conclusion that appellate counsel was not ineffective is not contrary to, or an unreasonable application of, Supreme Court precedent.   Petitioner, therefore, has no right to relief on her claim about appellate counsel.

### D.  Legal Justification, the Blood, and Ballistic Evidence

Petitioner's fourth and final claim and the supporting facts read as follows:

Legally justified due to provocation!!!

All blood and ballistic evidence EXONERATES me!  Not one piece of it backs State & Police manufactured murder scenario!  What they all did was deliberate and in full malice against me!  They KNEW the truth and chose to SUPPRESS it, thinking no one will know, especially since BOTH my attorneys covered for their gross misconduct!

ECF No. 9, PageID.212 (emphases in original).

Contrary to Petitioner's allegations, the blood and ballistic evidence did not exonerate her.  As explained *supra*, the blood on Petitioner's jeans contained the victim's DNA, and the casings found at the crime scene were fired from her gun.

There was additional evidence suggesting that the shooting was not justified. The medical examiner testified that the victim's chest wound was a contact wound, 6/3/14 Trial Tr., ECF No. 19-19, PageID.1528; that the chest wound occurred before the gunshot to the back of the victim's head, *id*. at PageID.1540, 1542; and that either wound by itself could have caused the victim's death, *id*. at PageID.1540–41.  The jury could have inferred from this evidence that Petitioner was able to stand very close to the victim before the shooting and, therefore, the victim could not have been pointing his rifle at Petitioner before the shooting.  The jury also could have inferred that Petitioner did not shoot in self-defense and that she did premeditate and deliberate the shooting.

The contention that the prosecution suppressed the truth lacks merit because Petitioner conceded at trial that she must have shot the victim one time because she remembered reaching in her purse for her gun.  6/5/14 Trial Tr., ECF No. 19-21, PageID.1845–46.  Although she could not remember whether she shot the victim a second time, she did not deny shooting him a second time.  *See id*.

To the extent Petitioner is raising an independent claim that she is innocent of the crimes for which she was convicted, her claim lacks merit because actual-innocence claims are not a basis "for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) (noting that a free-standing claim of actual innocence, when not coupled with allegations of constitutional error at trial, is not cognizable on habeas review). "This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact." *Herrera*, 506 U.S. at 400.

Petitioner has not persuaded the Court that a constitutional error occurred in the underlying criminal proceeding. Furthermore, "[a]ctual innocence means factual innocence, not mere legal insufficiency," *Bousley v. United States*, 523 U.S. 614, 615 (1998), and the contention that Petitioner is not guilty of first-degree murder because she acted in self-defense is one of legal innocence, not factual innocence. *See Beavers v. Saffle*, 216 F.3d 918, 923 (10th Cir. 2000). Petitioner has not stated a viable claim of actual innocence, and she is not entitled to relief on her claim that the evidence exonerated her or that her conduct was legally justified.

## IV. CONCLUSION AND ORDER

Petitioner's first claim is procedurally defaulted, and her other claims lack substantive merit because they are not supported by the record or are not a basis for granting habeas corpus relief.  In addition, the state courts' rejection of Petitioner's claims was not so lacking in justification that there was an error beyond any possibility for fairminded disagreement.

Based upon the foregoing, the Court **HEREBY DENIES** the Habeas Petition [#1] and Amended Habeas Petition [#9] for a writ of habeas corpus.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**. Reasonable jurists could not disagree with the Court's resolution of Petitioner's claims; nor could reasonable jurists conclude that the issues deserve encouragement to proceed further.  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

**IT IS FURTHER ORDERED** that leave to appeal *in forma pauperis* is **GRANTED**.  The Court concludes that an appeal could be taken in good faith.  28 U.S.C. §1915(a)(3).

**IT IS SO ORDERED**.

Dated:  December 9, 2020

/s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

A Copy of this Order was served on Diane Arellano, No. 936484, Women's Huron Valley Correctional Facility, 3201 Bemis Road, Ypsilanti, Michigan 48197 on December 9, 2020, by electronic and/or ordinary mail.

/s/ Teresa McGovern
Deputy Clerk